**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ted W. Morton, Jess Morton, Zac Morton, Jean Zachow, for the wrongful death of Mary Lou Morton<br><br>Plaintiffs,<br><br>vs.<br><br>United States of America,<br><br>Defendant. | No. CV 09-877-PHX-FJM<br><br>**ORDER** |

The court has before it defendant's motion for summary judgment (doc. 55), plaintiffs response (doc 82), and defendant's reply (doc. 85).

**I. Background**

Plaintiffs are the husband, two sons, and mother of Mary Lou Morton, who drowned in Roosevelt Lake. This is a wrongful death action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* On the night of April 28, 2008, Mary Lou Morton, who lived on the west side of Tonto Creek, had dinner with friends who lived on the east side. Tonto Creek runs through Tonto Basin and feeds into Roosevelt Lake. After dinner, Mary decided to return home and, at the suggestion of her friend, decided to take A-Cross Road, one of the three crossings that run through Tonto Creek. Mary had never traveled on A-Cross Road before so her friend gave her directions.

1  Later that night, however, Mary's vehicle was found in twenty feet of water fifty to seventy-
2  five yards from the boat ramp at the Indian Point Recreation Site, one of nine recreation sites
3  at Roosevelt Lake. Her body was discovered about 200 yards from the ramp.

4  Plaintiffs allege that the U.S. Forest Service negligently failed to sign the route to A-
5  Cross Road, to close the boat ramp gate, to adequately sign or light the boat ramp, the boat
6  ramp area, or the water's edge, and negligently designed the road to lead directly into the lake
7  such that Mary "was lead into Tonto Basin and drowned." Complaint at 4 (doc. 1).

8  Relying on McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1998), defendant
9  contends that it is immune from suit for two reasons. First, defendant argues that it is
10  immune under the Flood Control Act of 1928, 33 U.S.C. § 702c. Second, defendant argues
11  that the disputed conduct falls within the discretionary function exception to the United
12  States' waiver of sovereign immunity under the FTCA, 28 U.S.C. § 2680(a).

## II. The Flood Control Act

14  The Flood Control Act of 1928, 33 U.S.C. § 702c provides that "[n]o liability of any
15  kind shall attach to or rest upon the United States for any damage from or by floods or flood
16  waters at any place." Id. This provision bars recovery where the federal government would
17  otherwise be liable under the FTCA. Central Green Co. v. United States, 531 U.S. 425, 428-
18  29, 121 S. Ct. 1005, 1108 (2001). To determine whether the government is immune under
19  the Flood Control Act we must consider the "character of the waters that cause the relevant
20  damage and the purposes behind their release." Id. at 434, 121 S. Ct. at 1011. Simply
21  because waters are in some way related to a flood control project is insufficient. Id.

22  In Central Green, the petitioner owned pistachio orchards that were flooded by waters
23  from the Madera Canal, a federal facility maintained for irrigation and flood control
24  purposes. Id. at 427, 121 S. Ct. at 1007. Both the district court and the Ninth Circuit, relying
25  on dicta from United States v. James, 478 U.S. 597, 106 S. Ct. 3116 (1986), held that the
26  United States was immune merely because the Madera Canal was part of the Central Valley
27  Project, and therefore tenuously related to flood control. Id. at 427-28, 121 S. Ct. at 1107-08.
28  The Supreme Court reversed, rejecting the overly broad reading of the statute that focused

simply on whether the waters at issue were "related to" a flood control project. Id. at 436, 121 S. Ct. at 1011-12. Instead the Court held that the focus should be on the character of the waters. Id. at 437, 121 S. Ct. at 1012. In Central Green, the damage had occurred over a number of years, making it entirely possible that water from many sources flowed through the canal. Id.

Here, plaintiffs argue that Mary Morton's death occurred from an activity unrelated to a flood control project. They contend that she died because defendant was negligent in designing, signing, lighting, and maintaining the campground. They also claim that because defendant admitted the water in the lake was from the active conservation capacity tank, rather than from the flood water tank, the "character of the water" was not flood water. Defendant, on the other hand, argues that Roosevelt Lake contains flood water because in 1977 the Roosevelt Dam was raised for, among other things, flood control, and at the time of Mary's death the waters were at an unusually high level. Although they never reached the exclusive flood control storage area, defendant maintains that flood water could have been released from the active conservation area.

"Considering the character of the waters and the purpose behind their release" we deny summary judgment because there is insufficient evidence to support a finding that flood waters killed Mary Morton. Id. at 434, 121 S. Ct. at 1011 (emphasis added). As in Central Green, the damage here did not occur from a single discrete incident of flooding. There is no evidence that the lake overflowed or that Mary Morton drowned because flood waters engulfed her car. Sergeant John France testified that the week before the accident the creek had dropped 6-12 inches and the various crossings in Tonto Basin, including A-Cross, were easy to cross by vehicle. (DSOF, ex. 6 at 21). Defendant also admits that the lake's water came from the active conservation storage area, not from the flood control storage area. While it is possible that flood waters could have been in the lake, as in Central Green, the issue is unclear. Central Green requires us to "identify the cause of the damage rather than base a decision on the mere fact that a flood control project was involved." In re Katrina Canal Breaches Consol. Litig., 577 F. Supp. 2d 802, 825 (E.D. La. 2008) (denying summary

- 3 -

judgment based on § 702c because the "negligence for which plaintiffs seek compensation is not for any negligence that occurred in the construction or maintenance of the flood control project"). Given that the major purpose of the Roosevelt Dam is to store natural runoff for irrigation, and not flood control, it appears highly unlikely that this case really has anything to do with the Flood Control Act. Accordingly, we deny defendant's motion for summary judgment.

### III. The Discretionary Function Exception to the FTCA

Defendant next contends that its conduct is shielded by the "discretionary function" exception to the FTCA. Congress enacted the FTCA to waive the United States' sovereign immunity for certain torts committed by federal government employees. 28 U.S.C. § 1346(b). That waiver, however, is limited by the discretionary function exception. Under 28 U.S.C. § 2680(a), the FTCA does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." United States v. Gaubert, 499 U.S. 315, 323, 111 S. Ct. 1267, 1273 (1991).

The Supreme Court has established a two-part test to determine the exception's scope. Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S. Ct. 1954, 1958 (1988). First, we must determine whether the challenged action involves an element of choice or judgment. Id. The exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action . . . to follow." Id. Second, assuming the decision was discretionary, we must decide "whether the judgment is of the kind that the discretionary function exception was designed to shield;" specifically, whether the decisions were grounded in "social, economic or political policy." Id. The United States bears the burden of proving the exception. Signman v. United States, 217 F.3d 785, 793 (9th Cir. 2000).

Defendant asserts that its actions with regard to Tonto Basin– its decisions to keep the gate to Indian Point open, to fail to provide functioning lighting, to provide or not to provide

- 4 -

1  signs, and to design the road– all fall within the discretionary function exception. Plaintiffs
2  agree that defendant's decisions to build a road, sign it, or light it were not required by any
3  applicable rule. Therefore, our inquiry is limited to assessing whether each decision is
4  grounded in "social, economic, or political policy." Id.

### *1. The Open Gate*

Defendant argues that the gate to Indian Point was left open at night because it made a policy decision to provide twenty-four hour access to recreation site patrons. Defendant contends that this decision is protected by the discretionary function exception because it was grounded in 16 U.S.C. § 528 which provides that, "it is the policy of Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed and wildlife, and fish purposes." Plaintiffs, on the other hand, assert that keeping a gate open to a road that leads directly into a lake at night is merely negligent maintenance and not a policy decision. While reconciling conflicting case law in this area can be difficult, see United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 811, 104 S. Ct. 2755, 2763 (1984) (noting that "the Court's reading of the [FTCA] has admittedly not followed a straight line"); O'Toole v. United States, 295 F.3d 1029, 1035 (9th Cir. 2002), plaintiffs have the better argument.

Congress enacted the discretionary function exception to shield legislative and administrative decisions inherently grounded in social, economic, or political policy; it did not intend to protect simple maintenance decisions or a failure to provide safe conditions. See Oberson v. U.S. Dept. of Agric., Forest Serv., 514 F.3d 989, 998 (9th Cir. 2008) (holding that the failure to place a warning sign at the top of a hill was not a protected discretionary decision); ARA Leisure Servs. v. United States, 831 F.2d 193, 194 (9th Cir. 1987). For example, in ARA, a tour bus crashed off road in Denali National Park. 831 F.2d at 194. The passengers sued the National Park Service for negligently designing, constructing, and maintaining the road (there were no guardrails and the road had badly eroded). Id. While the court agreed that the decision to design a road without guardrails was protected, the failure to maintain the road in a safe condition was not. Id. at 195. There was no clear link

- 5 -

1  between any Park Service policy and the condition of the road to justify a conclusion that the
2  decision resulted from policy analysis. Id. Furthermore, the court concluded that maintenance
3  work is not the kind of regulatory activity Congress intended to shield from tort liability. Id.

4  Here, resort to the overarching policy statement of the U.S. Forest Service fails to
5  provide a sufficient link between that policy and the decision to keep a gate open or closed
6  at night on an unlit road. The discretionary function exception is intended to protect actions
7  "susceptible to policy analysis." Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275. The day to
8  day operation of a gate is hardly grounded in social, economic, or political policy. The
9  exception does not apply to the open gate.

10  ### *2. Lighting at the Boat Ramp*

11  Defendant next contends that its decisions regarding lighting at or near the boat ramp
12  involved a weighing of economic and environmental concerns as mandated by the Forest and
13  Rangeland Renewable Resources Act and the National Forest Management Act. 16 U.S.C.
14  § 1600-14. Defendant argues that there were no functioning lights at the boat ramp because:
15  1) funds had run short and money was prioritized to other more populated camp grounds; and
16  2) a ranger decided to remove the battery for the only remaining light out of concern that the
17  water levels would rise high enough to damage the light and cause pollutants to seep into the
18  lake. Plaintiffs, however, allege that such decisions were simply maintenance related and
19  did not involve the kind of discretion grounded in social or economic policy that Congress
20  intended to shield from tort liability.

21  Decisions based on a weighing of fiscal concerns are not protected by the
22  discretionary function exception. See ARA, 831 F.2d at 194 (holding that a decision not to
23  maintain safe roads due to budgetary constraints was not protected by the discretionary
24  function exception and stating that to hold otherwise would result in the exception
25  swallowing the rule); see also O'Toole, 295 F.3d at 1036 (holding that neglecting one's
26  property for fiscal reasons is not a protected policy decision). Therefore, defendant's
27  decision not to replace lights at the boat house for fiscal reasons is not protected by the
28  exception.

- 6 -

Additionally, maintenance decisions and a failure to provide safe conditions are not normally policy decisions. For example, in Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S. Ct. 122, 127 (1955), the Supreme Court held that plaintiffs could sue the government for failing to maintain a working light in a lighthouse because once the government decided to install and operate a light, it was "obligated to use due care to make certain that it was kept in good working order."

Here, defendant was not required by any rule or policy to provide a light at the boat ramp. Defendant argues that its decision to remove the last remaining light was based on environmental policy, namely to prevent the battery pack from releasing pollutants into the lake if it became submerged in water. This is a reach. Arguably, every decision could be clothed in some policy if you go back far enough. If that were enough, the exception would become the rule. Once defendant provided lights for the boat ramp area, it was required to exercise due care to maintain them. The government could have satisfied its environmental concerns by closing the unlit ramp at night. Finally, defendant offered no evidence that it removed lights from any other campground due to its environmental concerns. Defendant's decision was a maintenance decision, and thus not protected by the discretionary function exception.

### *3. Warning Signs*

Defendant contends that its decisions regarding signs at or near the boat ramp were based on sound engineering judgment and were in conformance with the Forest Service Handbook ("FSH").

The cases involving warning signs and the discretionary function exception are irreconcilable. Compare Oberson, 514 F.3d at 989; Soldano v. United States, 453 F.3d 1140, 1146 (9th Cir. 2006), and Farber v. United States, 56 F.3d 1122, 1127 (9th Cir. 1995) (all finding the discretionary function exception not applicable) with Childers v. United States, 40 F.3d 973, 974-76 (9th Cir. 1994) and Valdez v. United States, 56 F.3d 1177, 1179-80 (9th Cir. 1995) (holding that the discretionary function exception barred claims). Some of the divergent holdings are mired in the minutia of specific policy and guideline provisions and

lose sight of the basic purpose of the discretionary function exception: to protect overarching administrative and legislative decisions truly grounded in policy. We follow those cases that hold that the decision to place warning signs is not protected by the exception because it does not result from a weighing of policy concerns. See Soldano, 453 F.3d at 1146.

For example, in Oberson, the plaintiff sued the U.S. Forest Service for negligently failing to warn of a dangerous condition on a snowmobile trail. 514 F.3d at 998. In Farber, the Forest Service was sued for a failure to post a sign warning of the danger of diving off a waterfall. 56 F.3d at 1123-24. In Farber, the court stated that "[i]t would be wrong to apply the discretionary function exception in a case where a low-level government employee made a judgment not to post a warning sign." Id. at 1125. Accordingly, the decisions in both cases were not protected by the discretionary function exception.

Decisions to post a sign at a particular spot or to trim bushes so signs can be seen are not grounded in social, economic, or political policy. They are the actions or inactions for which the FTCA was designed. The discretionary function exception does not apply.

### *4. Road Design*

Plaintiffs claim that defendant negligently designed the road and its centerline straight through an unlit parking lot, onto a boat ramp, and into the lake. Defendant argues that plaintiffs failed to plead this as a claim for relief and, even if they had, design decisions are protected by the discretionary function exception.

We agree that road design decisions are inherently discretionary. See ARA, 831 F.2d at 195-96. The design of the road or the boat ramp, was part of the planning stage of the site and "involve[d] not merely engineering analysis but judgment as to the balancing of many technical, economic, and even social considerations." Kennewick Irr. Dist. v. United States, 880 F.2d 1018, 1029 (9th Cir. 1989) (holding that decisions in designing a canal system were protected under the discretionary function exception). This was not an on-site maintenance decision, but rather an overarching, planning decision subject to policy analysis. See ARA, (holding that decisions regarding road design were protected). Thus, the discretionary function exception bars plaintiffs' claim of negligent road design.

## IV. Conclusion

Defendant's decision to keep the gate open at night, not to provide lighting, and not to have or maintain visible warning signs were not decisions grounded in social, economic, or political policy, and therefore the discretionary function exception does not apply. In contrast, defendant's road design decision is protected by the discretionary function exception.

**IT IS THEREFORE ORDERED GRANTING IN PART** and **DENYING IN PART** defendant's motion for summary judgment (doc. 55). Summary judgment is granted on plaintiffs' claim that defendant negligently designed a road. Summary judgment is denied on plaintiffs' claims that defendant negligently failed to close a gate at night, to maintain lighting, to provide warning signs, and to ensure sign visibility.

DATED this 8th day of October, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge